UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, *Plaintiff,* - v - PANORAMIC IMAGES, *Defendant*. | Civil Action No. _____ **COMPLAINT** **ECF Case** |

Plaintiff, Houghton Mifflin Harcourt Publishing Company ("HMH"), by its undersigned

attorney, submits this Complaint against Defendant, Panoramic Images ("Panoramic"). Plaintiff

alleges as follows:

## NATURE OF ACTION

1.      This is an action for a declaratory judgment pursuant to the federal Declaratory

Judgment Act, 28 U.S.C. § 2201, to resolve an actual case or controversy that has arisen between

HMH and Panoramic. In early 2011, Panoramic asserted to HMH that it holds copyright

infringement claims against HMH that are related to HMH's use in its publications of

photographs that Panoramic licensed to HMH. After HMH formally terminated a brief agreed

tolling period in July 2011, Panoramic sat on its claims and never filed its threatened litigation

against HMH. Now, almost four years later, Panoramic has resurfaced with threats to pursue

litigation of the same alleged claims. HMH agreed to an additional tolling agreement from July

21, 2015, to September 15, 2015, in an attempt to resolve Panoramic's time-barred claims. Those

efforts proved fruitless. HMH now seeks declaratory relief from Panoramic's time-barred claims.

*See* 17 U.S.C.  § 507 ("No civil action shall be maintained under the provisions of this title

unless it is commenced within three years after the claim accrued.") Panoramic's continued

threat to pursue time-barred claims has harmed and will further harm HMH.

## THE PARTIES

2.      Plaintiff HMH is a wholly-owned subsidiary of Houghton Mifflin Harocurt

Company, a Delaware corporation. HMH's principal place of business is located at 222 Berkeley

Street, Boston, MA 02116.

3.      Upon information and belief, Defendant Panoramic is an Illinois corporation with

its principal place of business in Skokie, Illinois.

## JURISDICTION AND VENUE

4.      This is an action for a declaratory judgment pursuant to the federal Declaratory

Judgment Act, 28 U.S.C. § 2201.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2201, which

authorizes the Court to declare the rights and other legal relations between interested parties, and

28 U.S.C. § 1338, which provides for jurisdiction in connection with copyright claims.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) and pursuant to a

venue provision that appears in multiple licenses agreed between the parties. That venue

provision also provides the Court with personal jurisdiction over Panoramic. The venue

provision reads: "The License shall be subject to and construed in accordance with the laws of

the State of New York (without application of its conflicts or choice of law rules) regardless of

its place of negotiation, execution or performance. Any suit hereunder shall be brought in the

state or federal courts located in New York City, and you hereby waive any claim that such

courts lack personal jurisdiction over you and specifically assent to such courts' jurisdiction."

Upon information and belief, none of the licenses between the parties contains a competing

venue provision for copyright claims.

7.      This Court also has personal jurisdiction over Panoramic pursuant to N.Y. Civ. Prac. L & R 301, 302, because upon information and belief, Panoramic has purposely targeted its activities to and is systematically transacting, doing, and soliciting business in this district.

## FACTS

8.      HMH is a global learning company that specializes in pre-K–12 education content, services and technology solutions.  This content includes textbooks and related educational materials.

9.      HMH's content may include photographs licensed to HMH by third parties, including stock photograph agencies such as Panoramic.

10.     From at least 1991, and through and perhaps beyond 2009, Panoramic granted licenses to HMH for HMH to use Panoramic photographs in HMH publications.

11.     Panoramic owns or controls the copyrights in the images that it licenses to HMH.

12.     On February 14, 2011, counsel for Panoramic notified counsel for HMH that Panoramic believed that it held at least 575 distinct copyright infringement claims against HMH for the use of Panoramic images in excess of the applicable licenses. This disclosure was made within the context of settlement discussions that had begun between HMH and the various clients of Panoramic's counsel, Harmon & Seidman LLC.

13.     Pursuant to those discussions, HMH previously had entered into a February 12, 2011, "Agreement in Furtherance of Settlement Discussions" with Harmon & Seidman's clients. Pursuant to that agreement, HMH agreed to toll the statute of limitations for the claims of Harmon & Seidman clients who had been clients as of December 17, 2010, and who were identified to HMH by February 4, 2011. The statute of limitations (and all equitable defenses based on the passage of time) would be "tolled during the period beginning December 17, 2010

and continuing until written notice (by email or otherwise) is provided by either party to the other ending this tolling period, or automatically when litigation or arbitration is commenced." Harmon & Seidman identified Panoramic as a client as of December 17, 2010, and as alleged above, subsequently identified a minimum specific number of copyright claims that Panoramic believed it held.

14.     On July 18, 2011, counsel for HMH advised Harmon & Seidman in writing that it was terminating any continued tolling by operation of the February 12, 2011, agreement.

15.     In August 2012, recognizing that no tolling agreements remained in effect and that the clock was running down on its clients' claims, Harmon & Seidman asked counsel for HMH to enter into another tolling agreement. Counsel for HMH advised that no additional tolling agreement for Panoramic would be considered unless and until Panoramic provided HMH with additional information regarding its claims that would allow HMH to investigate those claims. Harmon & Seidman did not provide that information and no further tolling agreement for Panoramic was agreed at that time.

16.     On May 8, 2015, in connection with an inquiry from Harmon & Seidman regarding another one of their clients, counsel for HMH reminded Maurice Harmon of Harmon & Seidman that HMH had terminated the 2011 tolling agreement on July 18, 2011. On Friday, May 9, 2015, Christopher Seidman of Harmon & Seidman asked counsel for HMH for another copy of the July 18, 2011, correspondence that had terminated the tolling agreement. As requested, counsel for HMH provided a copy of that correspondence on Monday, May 11, 2015. Both Mr. Harmon and Mr. Seidman had received the correspondence terminating the tolling agreement when it was originally sent on July 18, 2011.

17.     After receiving a reminder that the tolling agreement had long since expired for Panoramic, and after years of no substantive discussions regarding Panoramic, on May 13, 2015, Mr. Harmon asked counsel for HMH for another tolling agreement and for information regarding HMH's use of Panoramic images. At the time there was no agreement in place that would require HMH to provide any such information to Panoramic. In fact, there had been no discussions between the parties for years, let alone discussions that could lead to an expectation that such information was forthcoming. Moreover, all discussions had broken off years previously precisely because Panoramic had not provided additional information about its claims.

18.     On May 22, 2015, Panoramic, through its counsel Harmon & Seidman, for the first time sent to HMH copies of invoices relating to its claims. Upon information and belief, these invoices were in Panoramic's custody or control in 2011 when the parties first discussed settlement and in 2012 when HMH asked for additional information.

19.     In May 2015, counsel for Panoramic also indicated that Panoramic would file its supposed copyright claims against HMH, unless HMH agreed to discuss settlement of these now time-barred claims. In connection with negotiations concerning other Harmon and Seidman clients, and at the insistence of Harmon and Seidman, HMH agreed to a final tolling agreement that covered only the period July 21, 2015, to September 15, 2015 – after Panoramic's time to file had already passed. No progress was made on resolving Panoramic's time-barred claims.

20.     Upon information and belief, Panoramic first became aware of its claims prior to the tolling period that commenced on December 17, 2010. Almost four years have passed since HMH terminated that tolling agreement and prior to the commencement of the brief tolling period that expired on September 15, 2015.

5

21.     Section 507 of the Copyright Act bars claims brought more than three years after the date of accrual.

22.     Panoramic was aware of its claims and was prepared to file a litigation to pursue those claims when it entered into the February 12, 2011, "Agreement in Furtherance of Settlement Discussions."

23.     As of February 14, 2011, Panoramic's knowledge was sufficiently detailed to allow it to provide to HMH an accounting of a minimum of 575 copyright infringement claims it believed it held against HMH.

24.     After HMH terminated that tolling agreement, Panoramic sat on its claims and allowed the time to file its copyright infringement claims against HMH to run.

## CLAIM FOR DECLARATORY RELIEF

25.     HMH realleges and incorporates each of the above allegations as set forth in paragraphs 1 through 24 as if set forth herein at length.

26.     Panoramic has claimed since February 2011 that HMH is liable to it for copyright infringement based on HMH's use of Panoramic images in HMH publications since at least 1991.

27.     Despite its knowledge since at least February 2011 that it had claims against HMH; and despite retaining counsel prior to February 2011 in order to pursue those claims, and despite attempting to negotiate those claims between February 2011 and July 2011 to avoid litigation; and despite HMH's explicit termination on July 18, 2011, of the tolling agreement in place at the time, and despite HMH's refusal to enter into a second tolling agreement in 2012, Panoramic allowed the statute of limitations to run on its claims without filing its lawsuit.

28.     Panoramic continues to threaten to bring a copyright infringement lawsuit against HMH.

29.     Panoramic has filed lawsuits against other publishers of educational content and materials, including McGraw-Hill Education, Pearson Education, Inc., and John Wiley & Sons, Inc.  Panoramic tried its claims against John Wiley & Sons, Inc. before a jury in Chicago in 2014.

30.     An actual, present and justiciable controversy has arisen between HMH and Panoramic concerning HMH's exposure to liability from Panoramic's claims.

31.     HMH has suffered and will continue to suffer irreparable harm as a result of Panoramic's continued threats to file its time-barred claims against HMH.

32.     Panoramic's claims against HMH are non-actionable under section 507 of the Copyright Act

33.     Panoramic's continued threats warrant judicial relief from this Court in the form of a declaration that Panoramic's claims for copyright infringement are time barred under section 507 of the Copyright Act and that HMH is not liable to Panoramic under the Copyright Act.

**WHEREFORE**, HMH prays for a declaratory judgment in its favor against Panoramic, for the following relief:

A.     an Order declaring that Panoramic was on notice of its copyright infringement claims against HMH at least as of the termination of the parties' tolling agreement on July 18, 2011, if not earlier;

B.     an Order declaring that Panoramic's copyright infringement claims based on the 575 image uses it identified to HMH on February 14, 2011, are barred under section 507 of the Copyright Act;

C.      an Order declaring that any and all Panoramic copyright infringement claims

against HMH that are based on an HMH use of a Panoramic image that commenced prior to July

18, 2011, are barred by section 507 of the Copyright Act;

D.      HMH's costs and disbursements incurred in this action, including its reasonable

attorney's fees; and

E.      Such other and additional relief to HMH as this Court may deem just, proper and

equitable.

Dated: September 15, 2015

Respectfully submitted,

_____*s/ Steven Napolitano*_____
Steven Napolitano
Steven.Napolitano@skadden.com
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036-6522
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorney for Plaintiff*